IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CRIMINAL NO. <u>19-4184 KG</u> |
| | ) | |
| vs. | ) | |
| | ) | |
| **DANIEL HERNANDEZ, a.k.a. "Grumpy**," | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**<u>UNITED STATES' BRIEF IN RESPONSE TO COURT'S ORDER TO SHOW CAUSE</u>**

## I.    <u>Background</u>

On March 29, 2021, the Court granted Defendant's motion to continue based on its

conclusion that the United States violated the standing discovery order (Doc. 25) by failing to

disclose Defendant's jail calls until March 23, 2021.  *See* Doc. 137.  The jury trial was set to

begin on March 30, 2021.[1]  Doc. 109.  At the pretrial conference, the Court first addressed the

Defendant's Motion to Continue or in the Alternative Strike the United States' Amended Exhibit

List which was filed on March 27, 2021.[2]  Doc. 132.  The United States responded in opposition

to Defendant's motion on March 29, 2021.  Doc. 133.  The primary issue addressed with respect

---

[1] The Court held a telephonic status conference on the afternoon of March 24, 2021.  Despite already having possession of the jail calls, defense counsel did not raise the issue with the Court and indicated he would be ready for trial the following week.  Doc. 123.

[2] The United States filed an Amended Exhibit List on March 26, 2021.  Among the new exhibits listed was a single jail call.  On March 27, 2021, defense counsel reached out to the United States for its position on his Motion to Continue or in the Alternative Strike the Amended Exhibit List.  The AUSA responded to defense counsel less than an hour later, but defense counsel had already filed his motion to continue under the assumption that it would be opposed.  The AUSA inquired of defense counsel whether his motion was based on the newly-listed jail call and offered not to use the call at trial unless it for some reason became relevant.

to that motion was the disclosure of the Defendant's jail calls one week before trial on March 23, 2021.  The Court reviewed the standing discovery order and determined that the jail call disclosure violated the terms of the order.  Doc. 137.

The Court further ordered the United States to submit a brief outlining reasons that the Court should not impose additional sanctions regarding the disclosure of the jail calls.  As explained below, the United States asserts that it did not violate the Court's standing discovery order.  However, even if the Court finds such a violation, Tenth Circuit precedent establishes— given the absence of bad faith—that the preferred sanction that a district court in this circuit should impose is that which this Court has already imposed—granting a continuance.

## II.   <u>Legal Standard and Authorities</u>

With respect to the written or recorded statements of a defendant, Federal Rule of Criminal Procedure 16(a)(1)(B) provides in relevant part that "[u]pon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:

(i)    Any ***relevant*** written or recorded statement by the defendant if:

a.  The statement is within the government's possession, custody, or control; and

b.  The attorney for the government knows—or through the exercise of due diligence could know—that the statement exists;

Fed. R. Crim. P 16(a)(1)(B)(i) (emphasis added).

Rule 16 also describes the available remedies if a party that fails to comply with the rule. It provides that the court may:

(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;

2

(B) grant a continuance;

(C) prohibit that party from introducing the undisclosed evidence; or

(D) enter any other order that is just under the circumstances.[3]

Fed. R. Crim. P. 16(d)(2).  "Despite this broad grant of power, the district court's exercise of discretion should be guided by several factors; and if a sanction is imposed, it should be the 'least severe sanction that will accomplish … prompt and full compliance with the court's discovery orders.'"  *United States v. Wicker*, 848 F.2d 1059, 1060 (10th Cir. 1988) (citation omitted).

Under the Tenth Circuit's decision in *Wicker*, the factors to be considered in determining whether to impose a sanction for a discovery infraction are "(1) the reasons the government delayed producing requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance."  *Id*. at 1061.  "The preferred sanction, especially in the absence of bad faith, is a continuance."  *United States v. Yepa*, 572 F. App'x 577, 583 (10th Cir. 2014) (unpublished) (*Yepa I*) (citing *United States v. Golyanksy*, 291 F.3d 1245, 1249 (10th Cir. 2002)).

With respect to the first factor, "exclusion is ordinarily only appropriate where a party acts in bad faith or lack any legitimate reason for a delay."  *United States v. Yepa*, 608 F. App'x 672, 678 (10th Cir. 2015) (unpublished) ("*Yepa II*").  As to the second factor, "[t]o support a finding of prejudice, the court must determine that the delay impacted the defendant's ability to

---

[3] With respect to Fed. R. Crim. P. 16(d)(2)(D), the United States was unable to find an example of any other type of sanction a district court has imposed other than granting a continuance or excluding undisclosed evidence in cases where the discovery infraction was not committed in bad faith.

prepare or present its case." *Golyansky*, 291 F.3d as 1250.  In that regard, the Seventh Circuit has held, "[a] defendant is prejudiced under Rule 16 only when he is unduly surprised and lacks an adequate opportunity to prepare a defense, or when the violation substantially influences the jury." *United States v. Stevens*, 380 F.3d 1021, 1026 (7th Cir. 2004) (quoting *United States v. De La Rosa*, 196 F.3d 712, 716 (7th Cir. 1999)); *see United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (noting, with regard to prejudice factor, that defense could not have been surprised that government planned to use late-disclosed evidence at trial).  As to the third *Wicker* factor, even where a district court finds prejudice that must be cured, "absent bad faith or a trial already in progress, a continuance is typically the appropriate remedy."  *Yepa II*, 608 F. App'x at 679; *see also Golyansky*, 291 F.3d at 1249 ("It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings.").

As to jail calls specifically, circuit courts across the country have held that disclosure of jail calls in the week leading up to trial does not per se constitute a discovery violation.  The Eighth Circuit found that calls disclosed three days before trial was not a violation of Rule 16. *See United States v. Sanchez-Garcia*, 685 F.3d 745, 755 (8th Cir. 2012) (admitting jail calls produced three days before trial).  In *Sanchez-Garcia*, the defendant argued that the government had breached its discovery obligations under Rule 16 by failing to disclose jail calls in a timely manner and sought to have the relevant recording excluded.  *Id.*  In response, the government represented that it did not become aware of the call until the week before trial while preparing a witness who disclosed knowledge of the call.  *Id.*  Upon identifying the call, the government promptly disclosed the call to the defense three days before trial.  *Id.*  Ultimately, the Eighth Circuit held that the district court did not abuse its discretion by admitting the call into evidence. *Id.*

4

The Sixth Circuit, in *United States v. Jackson*, confronted a similar situation.  304 F. App'x 424, 428 (6th Cir. 2008).  In that case, FBI agents conducting an investigation into misconduct by a defendant in jail awaiting trial learned information that would be relevant to the government's case against the defendant.  There, the government turned over the jail calls "a few days before trial" and the court held that there was no discovery violation in doing so.  *Id*.

In *United States v. Ricks*, 774 F. App'x 841, 848–49 (5th Cir. 2019), the Fifth Circuit rejected a defendant's claim that the government violated Rule 16 by failing to provide him with his recorded jail calls.  At oral argument, defendant's counsel conceded that the defendant never mentioned the calls to counsel which suggested that there was nothing relevant on them since the defendant, as a participant, must have been aware of the calls' contents.  *Id*.  The Fifth Circuit ultimately held that even if the failure to disclose the jail calls amounted to error, the defendant could not "show that the error was sufficiently prejudicial to warrant reversal because, as the district court found, [defendant] was already aware of the substance of his own prison phone calls and could have easily subpoenaed the records himself."  *Id*.  *See United States v. Ellender*, 947 F.2d 748, 756–57 (5th Cir. 1991) (rejecting the claim that the prosecutor violated the district court's discovery order and *Brady* by failing to produce the defendant's prison records because, with reasonable diligence, he could have obtained the material himself); *see also United States v. Doucette*, 979 F.2d 1042, 1045 (5th Cir. 1992) (applying the same reasonable diligence standard).

In *United States v. Peel*, No. 2:14-CR-00192-GEB, 2014 WL 5602608, at *2–4 (E.D. Cal. Nov. 3, 2014), a district court declined the defendant's invitation to find that the government had committed a discovery violation by disclosing one week before trial jail calls made by the defendant throughout the duration of his case.  There, the defendant argued that the government

5

had no justification for failing to disclose the defendant's months old jail calls until a week

before trial and sought to have the calls excluded or, in the alternative, a continuance of the trial.

*Id*.  The government countered that it had not violated its discovery obligations under Rule 16

because the defendant never requested the calls and that exclusion was not an available remedy

under the law.  *Id*.  The district court agreed with the government's position and noted that

"[e]xclusion is an appropriate remedy for a discovery … violation only where the omission was

willful and motivated by a desire to obtain a tactical advantage."  *Id*. (internal citations omitted).

As to the request for a continuance, the district court also declined to impose that sanction noting

that "[t]he in custody communications were disclosed a week in advance of trial, and Defendant

has not stated how additional defense preparation time would be helpful in any way."  *Id*.

(internal quotations and citations omitted).

### III.   <u>Argument</u>

### A.  The Jail Call Disclosure Did Not Violate Rule 16.

The language of the Court's standing discovery order ("the Order") closely tracks the

language of Rule 16 itself.  The Order reads in relevant part as follows:

> 2.  DISCLOSURE OF EVIDENCE BY THE GOVERNMENT: Unless the
> defendant has filed the aforesaid waiver, within eight (8) days of the entry of this
> Order, the Government shall provide to defendant's counsel without motion all of
> the information to which defendant is entitled pursuant to Rule 16 of the Federal
> Rules of Criminal Procedure, namely:
>
> (A)  Statements of the Defendant**:** The government shall disclose and make
> available for inspection, copying, or photographing: any ***relevant*** written or
> recorded statements made by the defendant, or copies thereof, within the
> possession, custody, or control of the government, the existence of which is
> known or by the exercise of due diligence may become known, to the attorney for
> the government;

Doc. 25 (emphasis added).[4]  Importantly, however, both Rule 16 and the Order require the disclosure of written or recorded statements made by the defendant that are relevant and known or should have been known by the attorney for the government.[5]

At issue in this case is the government's disclosure of Defendant's recorded jail calls on March 23, 2021—one week before trial was set to begin on March 30, 2021.  As was made clear at the pretrial conference, the Government did not come into possession of Defendant's jail calls until mid-to-late January 2021—well beyond the eight-day post-arraignment mandate set forth in the Order.   Given the significant volume of jail calls, the amount of time taken to review the calls for relevance was reasonable under the facts and circumstances of this case.

The circumstances under which the United States came into possession of Defendant's jail calls are important to put in context of the ongoing investigation of this case.  The United States debriefed co-defendant Savannah Padilla on January 8, 2021, and again on January 15, 2021.  At that time, Padilla had not pled guilty to her charges in the Indictment and did not do so until February 25, 2021.  During the course of the second debrief on January 15, 2021, Padilla

---

[4] As an initial matter, the Order speaks to information in the government's possession at the time the Order is entered.  The United States asserts that it timely complied with its discovery obligations imposed by the Order with respect to everything that was in its possession, custody, or control at the time the Order was entered on March 26, 2020.  The United States acknowledges that it has a continuing duty to disclose under paragraph 4 of the Order and Rule 16(c).  However, the continuing duty sections in both the Rule and the Order only cover items subject to the Rule in the first place (*i.e.*, relevant items known to the AUSA).

[5] For comparison purposes, Rule 16 reads in pertinent part: "[u]pon a defendant's request, the government must disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:

(i)    Any *relevant* written or recorded statement by the defendant if:
    a.   The statement is withing the government's possession custody or control; and
    b.   The attorney for the government knows—or through the exercise of due diligence could know—that the statement exists;

Fed. R. Crim. P 16(a)(1)(B)(i) (emphasis added).

stated that, at some point after Defendant was incarcerated, and before she was taken into custody, she received a call from Defendant.  During that call, Padilla stated that Defendant instructed her to contact the victim of the charged carjacking and tell him to "drop charges."  As a direct result of that new information, which could be evidence of a new crime (*i.e.*, witness tampering in violation of 18 U.S.C. § 1512), the United States asked ATF Special Agent Sterling Nixon ("Agent Nixon") to obtain Defendant's jail calls and locate the call identified by Padilla.

On or about January 15, 2021, Agent Nixon obtained Defendant's jail calls from the Doña Ana County Detention Center and forwarded them to the United States Attorney's Office ("USAO").  Similarly, on or about January 20, 2021, Agent Nixon obtained Defendant's jail calls from the Grant County Detention Center and forwarded them to the USAO.  Defendant has been incarcerated at either the Grant County Detention Center or the Doña Ana County Detention Center since on or about September 9, 2018, and the number of calls totaled approximately 1,100.

After obtaining the jail calls, Agent Nixon and an analyst at ATF began the process of listening to the jail calls to locate the call identified by Padilla and any other calls of relevance to this or another investigation.  The undersigned counsel did not have any communications with Agent Nixon regarding the jail calls until the week before this trial was set to begin.  In fact, during the intervening time between when the calls were obtained and disclosed, undersigned counsel turned their attention to preparing for a high-profile, multi-week murder trial in Albuquerque, New Mexico.  Upon return from that trial in Albuquerque in late March, the undersigned counsel began to focus on preparing for the trial in this case.  In the week leading up to trial, Agent Nixon informed undersigned counsel that he had identified a potentially relevant

phone call.[6]  The calls were disclosed on March 23, 2021, and the single relevant call was added

to the United States' Amended Exhibit List which was filed on March 26, 2021.  Thus, the

United States turned over the calls after conducting a review for relevance, and identified the

sole call which it believed to be potentially relevant.

      The Rule did not require the United States to disclose the jail calls without having

reviewed them for relevance.  As emphasized above, both Rule 16 and the Order mandate the

disclosure only of "any ***relevant*** written or recorded statements" made by the defendant that are

known to the prosecutor.  Neither the Rule nor the Order require the disclosure of ***all*** written or

recorded statements made by the defendant.  Interpreting Rule 16 to require the United States to

disclose all written or recorded statements of the defendant without any sort of review for

relevance would have a litany of negative and unintended consequences.

      One example of the consequences of such a broad interpretation of the Rule would

impose is the tremendous investigative cost.  As the Court knows, Defendants are well-aware

that their jail calls are subject to monitoring and recording by jail facilities, yet they routinely

make statements that constitute admissions and/or indicate consciousness of guilt, or statements

that, in and of themselves, may constitute new crimes or indicate an intent to engage in future

criminal activity.  Jail calls can contain information that is unrelated to the charges for which a

defendant is incarcerated, but that is important to follow up on without alerting the defendant that

the government is listening.[7]  For example, in this case, the United States had reason to believe

---

[6] As of the time of this writing, the specific call identified by Savannah Padilla has not yet been
identified, but Agent Nixon and his analyst are still attempting to identify it.

[7] There is an important distinction between a defendant being generally aware that his calls are
being monitored (because the recorded message informs him of that fact before each call), and a
defendant having actual knowledge that the government is actively monitoring his calls.

Defendant engaged in obstruction of justice by calling his co-defendant and ordering her to contact the victim and tell him to "drop charges."

The Rule does not require the disclosure without any review for relevance of jail calls because such disclosure would potentially jeopardize unrelated investigations by disclosing to the defendant information in the government's possession relating to that activity.  Some recent examples of investigative leads obtained through the monitoring and review of jail calls include the following:

- In 2018, the FBI listened to jail calls and foiled a plot to smuggle drugs into a jail facility to SNM gang members;

- In a felon in possession of a firearm case, the ATF listened to jail calls and learned the location of a firearm and was able to find and seize said firearm;

- The FBI recently reviewed jail calls and learned that an incarcerated SNM inmate had placed a "hit" on his brother's ex-girlfriend;

- In a recent high-profile murder case in Albuquerque, the FBI pieced together much of the evidence by listening to jail calls;

- The FBI listened to jail calls and learned the location of narcotics that had been missed during the execution of a search warrant;

- Through jail calls, the FBI learned of an SNM inmate's plan to fraudulently obtain COVID-related monetary benefits;

- The FBI listened to jail calls of an inmate that had already been sentenced to prison, but was a suspect in an ongoing murder investigation.  The calls revealed that the inmate was angry with the FBI and wanted to blow up the FBI building.

Requiring the immediate disclosure of all jail calls obtained by the government would tip off defendants about the investigatory leads and impede the government's ability to act on them. This is especially true in situations where defendants engage in new criminal activity or continue to provide valuable information on an active and ongoing basis.

Other examples of where a broad interpretation of Rule 16 can have unintended consequences are cases involving serial defendants. As the Court is well-aware, the United States often deals with repeat offenders. Each time the United States prosecutes a defendant, it obtains a large amount of information which almost always includes statements of the defendant. Reading Rule 16 to require the disclosure of *all* statements of the defendant, instead of just those that are *relevant*, would require the government to turn over significant amounts of discovery from unrelated cases which the government has in its possession, custody or control when the AUSA knows about it.

Statements from unrelated cases that would be subject to immediate disclosure extend well beyond a defendant's jail calls. Some examples could include statements of the defendant that were obtained through wiretaps (such as phone calls and text messages), social media evidence (such as Facebook or Instagram posts or messages), and computer searches. These types of defendant statements in unrelated cases would also be subject to immediate disclosure under the Court's broad reading of Rule 16 and its standing discovery order. Such statements from prior cases are highly unlikely to have any relevance to the case at bar. Disclosure of these statements would serve no purpose other than to overwhelm and inundate defense counsel with information that bears no connection to their client's current case.

Additionally, the jail calls in this case were not in the exclusive possession of the government. In fact, in many cases, the United States never obtains a defendant's jail calls. In

any of those cases, if defense counsel has reason to believe that jail calls may be of relevance to their own investigation, then they can, through the exercise of their own due diligence, obtain and review the calls.

Finally, such jail calls are of no surprise to a defendant—in this case or any other case. Defendant made all of the calls.  He is well-aware of their content.  If there was something exculpatory or relevant to his case in his jail calls, he could have told his counsel and they could have followed up on it through the exercise of their own due diligence. That he apparently did not do so is a telling indicator of the likely investigatory value of the information in his calls.

**B.   Even if a Discovery Infraction Occurred, There Was No Bad Faith.**

As articulated above, district courts in the Tenth Circuit must look to the factors set forth in *United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988), in determining whether to impose a sanction for a discovery infraction.  Those factors include: (1) the reasons the government delayed producing requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance.  Absent bad faith, the preferred course of action is for the Court to grant a continuance, which it already has. *United States v. Yepa*, 572 F'Appx 577, 583 (10th Cir. 2014) (unpublished) (*Yepa I*) (citing *United States v. Golyanksy*, 291 F.3d 1245, 1249 (10th Cir. 2002)).  As noted above, the United States did not violate the Court's standing discovery Order or Rule 16.  For the additional reasons set forth below, no additional discovery sanctions should be imposed and exclusion of evidence is not an appropriate remedy.

As to the first factor, the United States delayed producing the jail calls while it reviewed them for any statements of relevance to the case.  Upon discovering a potentially relevant call the

12

week before trial, it disclosed the jail calls and added one call (approximately 2 minutes in length) to its amended exhibit list.  Whether the delay in disclosing that call was reasonable under the circumstances is for the Court to decide, but there is zero evidence the United States acted in bad faith.  Bad faith sanctionable by exclusion of evidence would be demonstrated by a violation that was willful and motivated by a desire to obtain a tactical advantage.  No such desire existed here.  The United States acted appropriately in reviewing the calls for relevancy before simply turning over all the calls.  After reviewing the calls for relevance, the United States marked only one call out of nearly 1,100 as an exhibit and even offered not to use it at trial so that the trial could go forward.[8]  That fact alone highlights the remarkably mundane nature of Defendant's jail calls.  This is not the "rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings."  *See United States v. Golyanksy*, 291 F.3d 1245, 1249 (10th Cir. 2002)

    With regard to the second factor, "[t]o support a finding of prejudice, the court must determine that the delay impacted the defendant's ability to prepare or present its case." *Golyansky*, 291 F.3d at 1250.  In that regard, the Seventh Circuit has held, "[a] defendant is prejudiced under Rule 16 only when he is unduly surprised and lacks an adequate opportunity to prepare a defense, or when the violation substantially influences the jury." *United States v. Stevens*, 380 F.3d 1021, 1026 (7th Cir. 2004) (quoting *United States v. De La Rosa*, 196 F.3d 712, 716 (7th Cir. 1999)); *see United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (noting, with regard to prejudice factor, that defense could not have been surprised that government

---

[8] Of course, as discussed below, now that the Court has granted a continuance, there is no reason to exclude the call at trial.

planned to use late-disclosed evidence at trial).[9]  Here, Defendant could not have been "unduly surprised" by his own jail calls.  He was party to each and every call.  He presumably knew of each call's participants and the substance of what was discussed.  Under *Wicker*, the Court is to consider not simply the fact of prejudice, but the extent of prejudice.  And here, even if Defendant can be said to have suffered some prejudice, the extent of that prejudice was de minimis.

Finally, the third factor requires the Court to consider the feasibility of curing the prejudice with a continuance.  In situations where a district court finds prejudice that must be cured, "absent bad faith or a trial already in progress, a continuance is typically the appropriate remedy." *Yepa II*, 608 F. App'x at 679; *see also Golyansky*, 291 F.3d at 1249 ("It would be a rare case where, absent bad faith, a district court should exclude evidence rather than continue the proceedings.").  Here, the Court has already properly remedied any prejudice suffered by Defendant with a continuance of over a month.  Additionally, because there is no evidence that the United States' disclosure of the jail calls one week before trial was done in bad faith (*i.e.*, that the late disclosure was willful or motivated by a desire to obtain a tactical advantage), this is not the "rare case" where the district court should remedy a discovery infraction by excluding evidence.  As a result, the newly-listed items on the United States' Amended Exhibit List should not be struck and the Court should allow the United States to admit those items into evidence if the United States establishes a proper basis and foundation.

---

[9] For its definition of "prejudice," *Golyansky* cited, among other cases, *Ivy* and *United States v. Cruz-Velasco*, 224 F.3d 654, 663 (7th Cir. 2000).  *Cruz-Velasco*, in turn, used the same quote from *De La Rosa* as the *Stevens* court, holding that "[p]rejudice exists when the defendant 'is unduly surprised and lacks an adequate opportunity to prepare a defense, or when the violation substantially influences the jury.'"  224 F.3d at 663 (quoting *De La Rosa*, 196 F.3d at 716).  Thus, the "unduly surprised" element of prejudice appears to apply in the Tenth Circuit.

IV.     **Conclusion**

Based on the foregoing, the United States asserts that it has shown good cause as to why the Court should not impose any sanctions in addition to the continuance that it has already granted.  The United States did not violate the Court's standing discovery order or Rule 16 by disclosing Defendant's jail calls one week before trial.  As outlined above, in situations analogous to this case, circuit courts around the country have found no violation of Rule 16 with respect to the government's disclosure of jail calls as little as three days before trial.  *See*, *e.g.*, *United States v. Sanchez-Garcia*, 685 F.3d 745, 755 (8th Cir. 2012) (admitting jail calls produced three days before trial).  However, even if the Court finds that a discovery infraction occurred, there is no evidence the United States committed that infraction in bad faith.  A fair evaluation of the *Wicker* factors militates against imposing any sanctions beyond the month-long continuance that the Court has already imposed.

Respectfully submitted,

FRED FEDERICI
Acting United States Attorney

*__Electronically filed 04/02/21__*
MARIA Y. ARMIJO
RYAN ELLISON
*Assistant United States Attorneys*
200 N. Church Street
Las Cruces, NM 88001
(575) 522-2304 - Tel.
(575) 522-2391 – Fax

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 2, 2021, a copy of this pleading was filed electronically through the District Court's CM/ECF electronic filing system which is designed to serve copies of this pleading to all counsel of record.

***<u>Electronically filed 04/02/2021</u>***
RYAN ELLISON
*Assistant United States Attorney*