IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                         No. CR 19-4184-001 KG

DANIEL HERNANDEZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Daniel Hernandez's Motion in Limine and Objections to Proposed Exhibits (Motion) (Doc. 148) and the United States' Response in Opposition to Defendant's Motion in Limine and Objections to Proposed Exhibits and Notice of Intent to Offer Evidence of Other Crimes or Bad Acts Pursuant to Fed. R. Evid. 404(b) (Response) (Doc. 151). The Motion is now ripe for disposition. For the reasons set forth below, the Court grants in part and denies in part Mr. Hernandez's Motion (Doc. 148).

*I.*     *Background*

On November 13, 2019, the Grand Jury charged Mr. Hernandez with a ten-count Indictment. (Doc. 3). Initially, Mr. Hernandez was scheduled to proceed with a jury trial on March 30, 2021. (Doc. 109). However, on March 23, 2021, defense counsel received 1,099 recorded jail calls, two recorded conversations of possible witnesses, and 214 pages of written discovery from the United States. (Doc. 148) at 1. Later that week, defense counsel received another 18 pages of written discovery, and the United States filed an Amended Exhibit List (Doc. 130). *Id.* at 1-2.

On March 29, 2021, the Court held a pretrial conference to confer with the parties on their readiness for the March 30, 2021, jury trial. (Doc. 137) at 1-4. After hearing from defense counsel on the nature of the United States' late disclosures, the Court continued the trial until May 3, 2021. *Id.* at 4. In the interim, between March 30, 2021, and April 21, 2021, defense counsel received another several hundred recorded jail calls and nearly 400 additional pages of written discovery from the United States. (Doc. 148) at 2-3.

On April 22, 2021, the Court conducted a pretrial conference in preparation for the May 3, 2021, jury trial. (Doc. 138). At the conference, defense counsel requested leave to file a Motion in Limine to request exclusion of certain evidence related to Count 1 in the Indictment and other exhibits proffered by the United States. (Doc. 147) at 1. As instructed, defense counsel timely filed his Motion in Limine requesting a pretrial ruling on the admissibility of the United States' proposed exhibits. (Doc. 148).

Consistent with his representation to the Court at the pretrial conference, Mr. Hernandez pled guilty to Count 1 of the Indictment on April 29, 2021. In addition, the jury trial is set to commence as scheduled on May 3, 2021. (Doc. 139). As a result, the Court enters this Order detailing its conclusions on the admissibility of the contested evidence.

*II.    Discussion*

Mr. Hernandez's Motion raises six points of contention. (Doc. 148). In addition, the parties dispute the timeliness of Mr. Hernandez's request. *Id.* at 1-4; (Doc. 151) at 1-3. Notwithstanding the issue of timeliness, Mr. Hernandez objects to: the (1) admissibility of evidence related to Count 1; (2) admissibility of Exhibit 113, a 911 call; (3) admissibility of Exhibit 120, co-Defendant Savannah Padilla's plea agreement; (4) admissibility of Exhibits 114, 115, 116, and 117, body-camera footage from Mr. Hernandez's arrest; (5) admissibility of

Exhibits 39 through 93, photographs of a child's bedroom; and (6) admissibility of Exhibits 94, 121, and 122, booking and license photographs. (Doc. 148). The Court will address each objection in turn, beginning with the issue of timeliness.

*A. Timeliness*

First, Mr. Hernandez asserts that some of the evidence to which he now objects was not on the United States' initial Exhibit List, and "with the exception of the last 30 days, [he] had no need to object." (Doc. 148) at 4. In particular, Mr. Hernandez explains that his decision to plead guilty to Count 1 informed the necessity of objecting to the United States' exhibits. *Id.* In response, the United States asserts that its late disclosures did not "pertain specifically to Count 1." (Doc. 151) at 2. As a result, the United States contends Mr. Hernandez's untimely request is merely the result of his "late change in trial strategy," and, thus, not predicated on the United States' own late submissions. *Id.* at 3.

The Court acknowledges the last-minute nature of Mr. Hernandez's Motion, on the eve of trial. However, the interests of justice—particularly, the seriousness of the charges alleged and the potential consequences at stake—warrant the Court's consideration of Mr. Hernandez's present objections. The Court also notes that co-counsel for Mr. Hernandez was appointed on September 16, 2020, and, thus, he did not have the earlier benefit of reviewing the United States' initial disclosures. *See* (Doc. 71).

In short, it is undisputed that the deadline to file Motions in Limine was November 10, 2020, and, therefore, Mr. Hernandez's present Motion is untimely. *See* (Doc. 70). Nevertheless, the Court will overlook the untimeliness of Mr. Hernandez's Motion because of the specific facts of this case and the underlying circumstances detailed above. Even so, the Court urges a better practice—namely, to comply with the Court's deadlines or otherwise bring these matters to the

Court's attention well in advance of trial.

### B. Evidence related to Count 1 & the 911 Call

Mr. Hernandez first objects to the United States' submission of evidence related to Count 1 in the Indictment. In support, Mr. Hernandez explains that the factual circumstances surrounding Count 1 are no longer in dispute, because he pled guilty to that Count in the Indictment. Specifically, the evidence alleges that on September 6, 2018, Mr. Hernandez pointed a firearm at Monteque Montano. (Doc. 148) at 5. Later, Mr. Montano called 911 and reported this incident to the police. *Id.* at 5-6. During the call, Mr. Montano allegedly provided a "detailed description" of the firearm to police dispatch. (Doc. 151) at 5, 8. Mr. Hernandez requests exclusion of both Mr. Montano's anticipated testimony regarding the firearm and the recording of his subsequent call to 911, offered as Government's Exhibit 113. (Doc. 148) at 7.

In response, the United States contends that the evidence related to Mr. Montano is relevant notwithstanding Mr. Hernandez's plea to Count 1 in the Indictment. (Doc. 151) at 5. In pertinent part, the United States asserts that Mr. Montano will testify that he clearly observed the firearm during the incident and consistently detailed the firearm's description in his subsequent interactions with law enforcement. *Id.* at 5. The United States contends that a firearm matching the one described by Mr. Montano was later used during the crimes alleged in Counts 2, 5, 6, 7, 8, 9, and 10 of the Indictment. *Id.* at 5. Thus, the United States argues that Mr. Montano's testimony illustrates that Mr. Hernandez "knowingly possessed a firearm," and that such possession was not transitory or fleeting. *Id.* at 6.

Pursuant to Federal Rule of Evidence 401, evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence;" and "(b) the fact is of consequence in determining the action." "Rule 401 is a liberal standard," and

4

'[e]xcept for certain well-defined instances, all relevant evidence is admissible." *United States v. Leonard*, 439 F.3d 648, 651 (10th Cir. 2006). After reviewing the parties' submissions and the relevant law, the Court concludes that Mr. Montano's testimony regarding the firearm's description and his subsequent 911 call are relevant.

In particular, the United States argues that the firearm described by Mr. Montano is the same firearm allegedly used in Counts 5, 6, 7, 8, and 9, and possessed in Counts 2 and 10 of the Indictment. The Court agrees that this evidence has a tendency to "make a fact more or less probable" and is "of consequence" to Mr. Hernandez's knowing possession throughout the subsequent conduct alleged in the Indictment. Plainly stated, this evidence tends to establish Mr. Hernandez's connection to the firearm that was later discovered in the home where he allegedly was staying. For these reasons, the evidence related to Mr. Montano is relevant under Rule 401.

Notwithstanding relevancy, the evidence must also satisfy the Rule 404(b) inquiry for proper admission before the jury. Pursuant to Rule 404(b), evidence of "other crimes, wrongs, or acts" may be admissible in a criminal case to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Here, the evidence is offered to prove that Mr. Hernandez knowingly possessed the firearm on September 6, 2018. Moreover, the evidence is offered to prove Mr. Hernandez's opportunity to knowingly possess the firearm as charged in Count 10 of the Indictment, and the identity of the firearm later discovered on September 9, 2021. Thus, the purpose for which the United States intends to offer the evidence is proper under Rule 404(b).

The Court will instruct the jury to limit its consideration of the evidence to the proper purpose for which it is offered under Rule 404(b). In addition, Mr. Hernandez may propose his own limiting instruction for consideration. *See United States v. Diaz*, 679 F.3d 1183, 1190 (10th

5

Cir. 2012) (explaining that upon request, court "must instruct the jury that the evidence of similar acts is to be considered only for the limited purpose for which it was admitted").

Next, although the evidence is relevant and offered for a proper purpose, it may only be admitted if its probative value is not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. The Court concludes that any prejudice Mr. Hernandez may suffer does not substantially outweigh the probative value of this evidence as detailed above. Indeed, the Tenth Circuit has upheld the admission of evidence involving more prejudicial conduct. *See e.g.*, *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010) (finding no unfair prejudice where district court admitted into evidence testimony regarding fact that charged crimes were committed after defendant had escaped from prison); *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995) (holding that probative value of evidence that defendant had recently been released from prison, offered to show identity, opportunity, and motive, outweighed its prejudicial effect in bank robbery prosecution). After conducting the requisite balancing test, the Court concludes the evidence is admissible also under Rule 403.

Finally, the Court notes that despite the admissibility of the evidence as delineated above, Mr. Montano's 911 call must also fall within a hearsay exception for proper admission. Indeed, under Rule 801(c), hearsay consists of any out-of-court statement offered "to prove the truth of the matter asserted in the statement." *See also* Fed. Rule Evid. 802 ("Rule against hearsay"). Even so, present sense impressions and excited utterances generally are not excluded by the rule against hearsay. *See* Fed. Rule Evid. 803(1) and (2).

At this time and with the proffer available, the Court construes Mr. Montano's 911 call as an out-of-court statement offered to prove the truth of the matter asserted and is, thus, hearsay. However, Mr. Montano allegedly made the 911 call immediately after Mr. Hernandez threatened

6

him and pointed the firearm in his face. (Doc. 151) at 8-9. Indeed, the United States contends that after his encounter with Mr. Hernandez, Mr. Montano quickly drove the 0.7-mile distance to his home and "immediately" dialed 911. *Id.* Silver City Police Officer Letitia Lopez interviewed Mr. Montano shortly after the 911 call and is expected to testify that Mr. Montano was still excited and under the stress of what happened. *Id.* Officer Lopez also interviewed Mr. Montano's mother, who saw Mr. Hernandez pointing a gun at Mr. Montano, and told Officer Lopez that her son was upset and scared. *Id.*

This evidence and anticipated testimony illustrate that Mr. Montano's 911 call was made "immediately after" the incident, while still "under the stress of excitement that it caused." As a result, the Court concludes that Mr. Montano's 911 call is admissible both as a present sense impression under Rule 803(a) and an excited utterance under Rule 803(2). *See e.g., Navarette v. California*, 572 U.S. 393, 400 (2014) (opining that "[u]nsurprisingly, 911 calls that would otherwise be inadmissible hearsay have often been admitted on [present sense impression and excited utterance] grounds"); *see also Maples v. Vollmer*, 2013 WL 1681234, at *7 (D.N.M.) (explaining that "[m]any courts across the country have found it proper to admit a 911 caller's statements as a present sense impression and/or an excited utterance") (collecting cases).

Notwithstanding the general admissibility of the statements, however, the Court requires further clarification from the United States as to the scope of the call and the surrounding circumstances. For these reasons, Mr. Hernandez's objections to Mr. Montano's testimony and his 911 call introduced as Government's Exhibit 113 are overruled in part, subject to further clarification from the United States. Generally, the evidence is admissible under Federal Rules of Evidence 401, 403, 404(b), and the hearsay exceptions delineated in 803(1) and (2), but the Court maintains discretion to reconsider the scope of its ruling based on the factual

circumstances surrounding the evidence that is offered.

Lastly, insofar as the United States anticipates testimony from Officer Lopez and Mr. Montano's mother relating to the firearm, the Court will exclude this evidence. Indeed, while not argued directly before the Court in the parties' briefing, the Court construes this evidence as not admissible under Rule 404(b) or 403. Therefore, the United States is prohibited from eliciting this testimony from either witness while on the stand.

### C. The Plea Agreement, Exhibit 120

Next, Mr. Hernandez requests that the Court exclude Government Exhibit 120, co-Defendant Savannah Padilla's plea agreement. (Doc. 148) at 7. In response, the United States asserts that it will not offer Ms. Padilla's plea agreement as substantive evidence of Mr. Hernandez's guilt. (Doc. 151) at 17. Instead, the United States claims it will only offer the plea agreement if necessary to restore Ms. Padilla's credibility on redirect examination. *Id.*

As a result of the United States' representations, the Court will admit the plea agreement for impeachment and rehabilitation purposes only. Even so, if necessary, the Court will instruct the jury appropriately as to how they can consider the plea agreement. Mr. Hernandez's objection on admission of the plea agreement is therefore granted in part and denied in part.

### D. Body-camera Footage, Exhibits 114, 115, 116, 117

Mr. Hernandez next argues that the Court should exclude Exhibits 114, 115, 116, and 117. First, Exhibit 114 shows Mr. Hernandez leaving an apartment, identifying himself to police by a false name, and then fleeing from police. Second, Exhibit 115 shows an officer briefly entering the apartment and the foot chase after Mr. Hernandez fled. Both Exhibits 114 and 115 are relevant and admissible under Rule 401 insofar as they are offered to show consciousness of guilt.

Indeed, "flight evidence carries with it a strong consciousness of guilt." *United States v. Martinez*, 681 F.2d 1248, 1256 (10th Cir. 1982). "This fact becomes even more probative when the defendant knows that an officer is seeking to arrest him at the time of his resistance or flight, and when such resistance or flight occurs shortly after the commission of the crime or the defendant's discovery that he is accused of the crime." *United States v. Barros*, 2007 WL 9724504, at *4 (D.N.M.); *See also Kreuter v. United States*, 376 F.2d 654, 657 (10th Cir. 1967) (affirming trial court's instruction that intentional flight "may be considered by the jury in the light of all other evidence in the case, in determining guilt or innocence"). In addition, the probative value of these exhibits substantially outweighs any undue prejudice. In accord with this ruling, however, Exhibits 114 and 115 may only be offered to show consciousness of guilt, to avoid any character or other wrongs issues governed by Rule 404(a) and (b).

Next, Exhibit 116 shows police interactions with Mr. Hernandez's ex-girlfriend, Jacqueline Silva. The United States agreed to only introduce Exhibit 116 for impeachment purposes related to Ms. Silva. As a result, Exhibit 116 will be admitted for impeachment purposes only. However, the Court reserves discretion to reconsider the admissibility of Exhibit 116 based on the factual circumstances surrounding the evidence offered at trial.

Lastly, Exhibit 117 shows Mr. Hernandez sitting in the back seat of a police car. In the video, Mr. Hernandez states to police that he has information related to drugs and would like to make a deal. The Court rules that this video is inadmissible as not sufficiently relevant. Indeed, by this point, Mr. Hernandez is already in custody and, thus, the evidence is not relevant to the conduct charged in the Indictment. Nevertheless, to the extent the video is relevant, any probative value is substantially outweighed by a danger of unfair prejudice. Simply stated, the Rule 403 balancing test tips in favor of excluding this evidence from the jury's purview.

In summary, Exhibits 114 and 115 may be offered to show consciousness of guilt, but their admission will be accompanied by a limiting instruction. Next, Exhibit 116 is admissible only for impeachment and rehabilitation purposes. In addition, the Court reserves the right to modify its ruling on Exhibit 116 as the circumstances develop at trial. Finally, Exhibit 117 is not relevant and, even if it is relevant, any probative value is substantially outweighed by the danger of unfair prejudice. The Court, therefore, grants in part and denies in part Mr. Hernandez's objections on the body-camera footage.

### E. Photographs of Child's Bedroom, Exhibits 39-93

Next, Mr. Hernandez objects to admission of Exhibits 39 through 93. (Doc. 148) at 9. These exhibits are photographs of Apartment 17, where officers responded to a domestic violence call on September 9, 2018. Specifically, Exhibits 59-63 are photographs of a child's bedroom. Exhibit 59 also shows a child's car seat.

In response to Mr. Hernandez's Motion, the United States agreed to withdraw its use of Exhibits 59-63. (Doc. 151) at 18. As a result, Mr. Hernandez's objection to these exhibits is now moot. In addition, the United States explains that it will limit the other photographs offered, 39-58 and 64-93, to mitigate Mr. Hernandez's cumulativeness concerns. *Id.* Therefore, this objection has likewise been resolved. Nevertheless, the Court notes that it will exclude any exhibits that it construes as cumulative during the course of trial.

### F. Booking and License Photographs, Exhibits 94, 121, 122

Lastly, Mr. Hernandez requests exclusion of booking and license photographs displayed in Exhibits 94, 121, and 122. The United States asserts that Mr. Hernandez and Ms. Padilla look very different today than they did in September 2018. (Doc. 151) at 18. The United States argues that all three photographs are relevant to show how Mr. Hernandez, Ms. Padilla, and the

argues that all three photographs are relevant to show how Mr. Hernandez, Ms. Padilla, and the carjacking victim looked in September 2018. *Id.*

Notwithstanding this contention, Mr. Hernandez asserts that even if the photographs are relevant, the probative value of the photos is substantially outweighed by the danger of unfair prejudice. (Doc. 148) at 10. The Court agrees that the booking photograph of Mr. Hernandez dressed in an orange jumpsuit with his face swollen and bruised is not relevant. Indeed, even if this photograph is relevant, the probative value of identifying Mr. Hernandez—who will be in the courtroom during the trial—is substantially outweighed by the danger of unfair prejudice. The other two photographs, however, Exhibits 121 and 122, are admissible. Assuming the United States can establish the necessary relevancy and foundation, these photographs are not unduly prejudicial to Mr. Hernandez. As a result, Mr. Hernandez's objection to the booking and license photographs is granted in part and denied in part.

*III.   Conclusion*

Based on the foregoing, Defendant Daniel Hernandez's Motion in Limine and Objections to Proposed Exhibits (Doc. 148) is granted in part and denied in part. The Court notes that its rulings on admissibility are each subject to the proper foundation established at trial. In addition, the Court maintains its discretion to modify its rulings on admissibility as the relevant evidence and circumstances develop during the course of trial. Lastly, counsel shall tender proposed limiting instructions in accordance with this Order.

IT IS ORDERED.

_____
UNITED STATES DISTRICT JUDGE